IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES D. NACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-421 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 12th day of September, 2011, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 6) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending application for disability insurance benefits on February 2, 2007, alleging a disability onset date of December 19, 2006, due to bipolar disorder and headaches. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on July 24, 2008, at which plaintiff, represented by counsel, appeared and testified. On September 25, 2008, the ALJ issued a decision finding that plaintiff is not disabled. On February 26, 2010, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 36 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c). He has a high school education and has past relevant work experience as a corrections officer, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of degenerative

joint disease of the lumbar spine, migraine headaches, bipolar disorder, post-traumatic stress disorder, alcoholism and a history of marijuana abuse, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P. (R. 12).

The ALJ also found that plaintiff retains the residual functional capacity to perform work at the light exertional level but with numerous restrictions accounting for the limitations arising from his physical and mental impairments.[1] A vocational expert identified numerous categories of jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including mail clerk, garment sorter, cafeteria helper and conveyor loader. Relying on the vocational expert's testimony, the ALJ found that while plaintiff cannot perform his past relevant work, he is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled.

---

[1] Specifically, the ALJ found that plaintiff is "limited to no more than occasional postural maneuvers ... must avoid occupations that require climbing on ladders, ropes and scaffolds, is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes, is limited to occupations which require no more than occasional interaction with supervisors and coworkers and no interaction with members of the general public, is further limited to occupations which do not involve the handling, sale or preparation of alcoholic beverages or access to narcotic drugs, and must avoid occupations that are in the medical field." (R. 17).

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(1)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[2] for determining whether a claimant is under a disability. 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff alleges that: (1) the ALJ erred at step 3 by finding that plaintiff's mental disorders do not meet the criteria

---

[2] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §404.1520a.

of Listings 12.04 and 12.06; and, (2) the ALJ improperly evaluated plaintiff's subjective complaints. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of his findings are supported by substantial evidence.

Plaintiff first challenges the ALJ's step 3 finding that his mental impairments do not meet or equal any listing. At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §404.1520(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. However, the burden is on the claimant to present medical findings that show that his impairment matches a listing or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

♠AO 72
(Rev. 8/82)

- 5 -

In this case, as required under <u>Burnett</u>, the ALJ identified Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders) as the relevant listings that compare with plaintiff's severe mental impairments, then thoroughly explained why plaintiff's impairments do not satisfy those listings. (R. 13-17).

Specifically, the ALJ determined that although plaintiff satisfies the "A" criteria of listings 12.04 and 12.06, he fails to meet the "B" criteria of either listing. The "B" criteria of 12.04 and 12.06 are identical and require that a claimant's mental impairment must result in <u>at least two</u> of the following: "1. <u>Marked</u> restriction of activities of daily living; or 2. <u>Marked</u> difficulties in maintaining social functioning; or 3. <u>Marked</u> difficulties in maintaining concentration, persistence or pace; or, 4. <u>Repeated</u> episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 12.04B (emphasis added).

In this case, the ALJ reviewed the evidence and determined that plaintiff's mental impairments result in <u>mild</u> restrictions in activities of daily living; <u>moderate</u> difficulties in maintaining social functioning; and <u>moderate</u> difficulties in concentration, persistence or pace, and also that plaintiff has had no episodes of decompensation of an extended duration. (R. 13-16). Because plaintiff does not have marked limitations in any of the relevant areas, nor has he had any episodes of decompensation, the ALJ found that plaintiff does not meet the "B" criteria of 12.04 or 12.06. As the required level of severity is

met only when <u>both</u> the "A" <u>and</u> "B" criteria are satisfied, the ALJ concluded that plaintiff does not meet either listing.[3]

The ALJ more than adequately explained in his comprehensive step 3 analysis why plaintiff's impairments, either singly or in combination, do not meet or equal the severity of Listings 12.04 and 12.06, and his step 3 finding is supported by substantial evidence as outlined in his decision. (R. 13-17).

Plaintiff suggests that the ALJ did not properly account for Dr. Sedlock's conclusion that plaintiff has "marked" limitations in his ability to respond appropriately with supervisors and co-workers and to respond to work pressures in a usual work setting. (R. 185). However, the ALJ expressly addressed Dr. Sedlock's opinion regarding plaintiff's limitations and sufficiently explained why he gave that opinion diminished weight. In particular, the ALJ noted that Dr. Sedlock's opinion: (1) is inconsistent with his own generally benign objective findings and is not supported by any significant analysis regarding these "marked" limitations; (2) was rendered after a one-time only consultation; and, (3) failed to even address a question regarding drugs and alcohol by stating it was "not applicable." (R. 21).

Moreover, to the extent Dr. Sedlock noted marked restrictions in plaintiff's ability to respond appropriately to work pressures in a usual work setting, the ALJ accommodated such difficulties

---

[3] The ALJ also found that plaintiff does not meet the "C" criteria of Listing 12.04. This finding is not in dispute and also is supported by substantial evidence in the record.

in his residual functional capacity finding at step 5 by limiting plaintiff to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and, in general, relatively few work place changes. (R. 17). He further accounted for plaintiff's difficulty in interacting appropriately to supervisors and co-workers by limiting plaintiff to occupations which require no more than occasional interaction with supervisors and coworkers and no interaction with members of the general public.

Plaintiff also contends that the ALJ failed to consider in his step 3 analysis "multiple instances where plaintiff's GAF score falls below 50." The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). A GAF rating of 41-50 is meant to indicate "serious" symptoms or "serious" impairment in social and occupational functioning. A rating of 51 to 60 is meant to indicate "moderate" symptoms or "moderate" difficulty in social or occupational functioning. Id. at 34.

The court is satisfied that the ALJ properly considered plaintiff's GAF scores in his decision. First, the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have a direct correlation to the disability requirements and standards of the Act. See 65 Fed.Reg.

50746, 50764-65 (2000). Instead, the ALJ is to consider the clinical findings contained in the narrative reports of medical sources, and is to weigh that evidence under the standards set forth in the regulations for evaluating medical opinion evidence, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.1527(d).

Here, the ALJ adhered to the foregoing standards in addressing all of the medical evidence. Moreover, as the ALJ notes, Dr. Young, plaintiff's treating psychiatrist, indicated GAF ratings of 52 and 54, indicating moderate symptoms, around the summer of 2008 after plaintiff quit drinking and smoking marijuana, (R. 19), and, as explained in detail by the ALJ, marked restrictions in any of the requisite functional areas necessary to satisfy the "B" criteria of Listings 12.04 and 12.06 simply are not supported by the evidence, regardless of any sub-50 GAF ratings at various specific points in time. The court has reviewed the record and is satisfied that the ALJ's step 3 analysis and findings are supported by substantial evidence.

The court also is satisfied that the ALJ properly evaluated plaintiff's subjective complaints of pain and limitations in accordance with the regulations. 20 C.F.R. §404.1529(c); see also SSR 96-7p. As required, in assessing plaintiff's credibility, the ALJ considered plaintiff's subjective complaints, but also considered those complaints in light of the medical evidence, plaintiff's treatment history and all of the other evidence.

The ALJ did a very thorough job in his decision explaining why plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments are not entirely credible. (R. 17-22). Briefly, the ALJ first noted that plaintiff's complaints of debilitating limitations arising from his migraine headaches and back pain were not consistent with the documentary medical evidence or objective medical findings, which he discusses in detail in his decision. (R. 18). Likewise, the ALJ found that the clinical and objective findings and results of mental status examinations have not revealed any debilitating findings arising from plaintiff's mental impairments, (R. 19), and also that plaintiff's complaints were inconsistent with his treatment history for both his physical and mental impairments. (R. 20).

The ALJ further pointed out that plaintiff's allegations of totally disabling symptoms also are inconsistent with his activities of daily living, which include, *inter alia*, raising three children, taking care of pets and performing household chores, including mowing the lawn, as well as going bowling and golfing, attending AA meetings and playing fantasy football. (R.19).

Moreover, while it is true, as plaintiff now asserts, that sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity, see Fargnoli, 247 F.3d at 40, n.5, the ALJ did not do so here. Instead, in determining plaintiff's residual functional capacity, the ALJ properly considered plaintiff's allegations in light of not only

his activities of daily living but also in light of the medical evidence which revealed the absence of clinical and objective findings supporting plaintiff's allegations of totally debilitating symptoms. (R. 19-20).

The ALJ further explained why he believes that plaintiff's medication regimen for his impairments is entirely inconsistent with an individual experiencing debilitating symptoms. He noted that plaintiff was taking no medication at all for his headaches and back pain, and that he has been taking the same two medications for his mental impairments for years, indicating that they are controlling his symptoms. (R. 20). To the extent plaintiff takes issue with the ALJ's consideration of plaintiff's medication regimen, the ALJ properly did so under the regulations, as 20 C.F.R. §404.1529(c)(3)(iv) authorizes an ALJ to consider the effectiveness of medication in determining the intensity, persistence and limiting effects of a claimant's symptoms.

Plaintiff's argument that the "ALJ's opinion fails to address" plaintiff's testimony that he still is suffering from his symptoms is unpersuasive. A review of the ALJ's decision makes clear that he in fact did consider plaintiff's testimony and did not reject his subjective complaints entirely. Rather, to the extent plaintiff's allegations as to limitations arising from his impairments are supported by the medical and other evidence, the ALJ accommodated those limitations in his residual functional capacity finding. Only to the extent they were not so supported did the ALJ find them to be not credible. The court is satisfied

that the ALJ's evaluation of plaintiff's credibility is supported by substantial evidence.

After carefully and methodically considering all of the medical and other evidence of record, as well as plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Jessica L. Rafferty, Esq.
QuatriniRafferty, P.C.
550 E. Pittsburgh Street
Greensburg, PA 15601

Paul D. Kovac
Assistant United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219